

ORIGINAL

FILED IN
COURT OF APPEALS

# No. 01-11-00288-CR
2011 JUL 19 PM 4: 14
# No. 01-11-00289-CR

Trial Court Nos. 1238767 and 1238768   CLERK OF THE COURT

---

IN THE COURT OF APPEALS
FOR THE FIRST SUPREME JUDICIAL DISTRICT
at Houston, Texas

---

**MARCUS DESHUNN FREEMAN,**
*appellant*

***versus***

**THE STATE OF TEXAS,**
*appellee*

---

Appealed from the 183rd Judicial District Court of
Harris County, Texas

---

# **APPELLANT'S BRIEF**

---

TIMOTHY A. HOOTMAN
SBN 09965450
2402 Pease St
Houston, TX 770032
713.247.9548
713.583.9523 (fax)
E-mail: thootman2000@yahoo.com

**ATTORNEY FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

# No. 01-11-00288-CR
# No. 01-11-00289-CR

Trial Court Nos. 1238767 and 1238768

---

IN THE COURT OF APPEALS
FOR THE FIRST SUPREME JUDICIAL DISTRICT
at Houston, Texas

---

**MARCUS DESHUNN FREEMAN,**
*appellant*

***versus***

**THE STATE OF TEXAS,**
*appellee*

---

Appealed from the 183rd Judicial District Court of
Harris County, Texas

---

## APPELLANT'S BRIEF

---

TIMOTHY A. HOOTMAN
SBN 09965450
2402 Pease St
Houston, TX 770032
713.247.9548
713.583.9523 (fax)
E-mail: thootman2000@yahoo.com

**ATTORNEY FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

# LIST OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, appellant certifies that the following persons and entities are parties or counsel in this case:

**Appellant:** Marcus Deshunn Freeman

**Trial counsel for appellant:**
Troy Locklear
SBN 00791127
917 Franklin, 6th Fl
Houston, TX 77002
713.222.8769

Johathan Landers
SBN 24070101
2813 W. TC Jester
Houston, TX 77018
713.301.3153

**Appellate counsel for appellant:**
Timothy A. Hootman
SBN 09965450
2402 Pease St
Houston, TX 77003
713.247.9548
713.583.9523 (fax)
E-mail: thootman2000@yahoo.com

**Appellee:** The State of Texas

**Counsel for appellee:**
Sarah Mickelson
SBN 24064244
Mary Irvine
SBN 24038622
District Attorney's Office
1201 Franklin St
Houston, TX 77002
713.755.5800

ii

# TABLE OF CONTENTS

LIST OF PARTIES AND COUNSEL ............................................................... ii

TABLE OF CONTENTS .............................................................................. iii

INDEX OF AUTHORITIES ........................................................................... v

STATEMENT OF CASE ............................................................................... x

ISSUES PRESENTED .................................................................................. xi

STATEMENT OF FACTS ............................................................................. 1

SUMMARY OF ARGUMENT ....................................................................... 10

ARGUMENT AND AUTHORITIES ............................................................... 11

    I.      **Introduction.** ................................................................... 11

    II.     **Sufficiency of the evidence.** ............................................. 11

        *a.*     *Standard of review.* ................................................... 11

               *i.*    *Legal sufficiency of the evidence.* ..................... 11

               *ii.*   *Affirmative links doctrine.* .................................. 12

               *iii.*  *Proof regarding intent to deliver.* ....................... 14

        *b.*     *Analysis.* ................................................................ 15

    III.    **The deadly weapon finding.** ............................................ 17

    IV.    **Closing argument error.** .................................................. 19

        *a.*     *Introduction.* .......................................................... 19

        *b.*     *The law of what is permissible closing argument.* ......... 20

        *c.*     *Preservation of error.* .............................................. 21

               *i.*    *The general requirement that an objection be made in the trial court before the error may be raised on appeal.* ................................................. 21

               *ii.*   *The trial court objection requirement applied to closing argument error.* ...................................... 24

               *iii.*  *The recent Texas Supreme Court jurisprudence regarding closing argument error raised for the first time on appeal.* ......................................... 25

        *d.*     *Harmless error analysis as applied to closing arguments.* .............................................................. 25

|       | e.   | **Discussion.** ..................................................................................... | 28 |
|       |      | *i.* | *The cops-are-liars argument.* ............................................... | 28 |
|       |      | *ii.* | *The pit-bull-owners-are-drug-dealers argument* ................. | 31 |
|       |      | *iii.* | *Harm.* .................................................................................. | 33 |

PRAYER ........................................................................................................ 32

CERTIFICATE OF SERVICE ........................................................................... 33

# **INDEX OF AUTHORITIES**

**United States Supreme Court cases:**

*Burks v. United States*, 437 U.S. 1 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Coffin v. United States*, 156 U.S. 432 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Green v. Massey*, 437 U.S. 19 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Herrera v. Collins*, 506 U.S. 390 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re Winship*, 397 U.S. 358, 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Tehan v. United States*, 382 U.S. 406 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Leon*, 468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Texas cases:**

*Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . . . .26

*Allridge v. State*, 762 S.W.2d 146 (Tex. Crim. App. 1988) . . . . . . . . . . . . . . . . . . . . . . 26

*Armstrong v. State*, 82 S.W.3d 444 (Tex. App.—Austin 2002, no pet.) . . . . . . . . . . . . 14

*Barnett v. State*, 189 S.W.3d 272 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . .24

*Bauder v. State*, 921 S.W.2d 696 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . . .26

*Bibgy v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . . .20, 30

*Bible v. State*, 162 S.W.3d 234 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Borjan v. State*, 787 S.W.2d 53 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . 20, 30

*Branch v. State*, 529 S.W.2d 324 (Tex. Crim. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . .15

*Brazier v. State*, 748 S.W.2d 505 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). . . . 13

*Brown v. State*, 911 S.W.2d 744 (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Burk v. State*, 652 S.W.2d 788 (Tex. Crim. App. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Caballero v. State*, 919 S.W.2d 919 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).22

*Cameron v. State*, 241 S.W.3d 15 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . 22, 23

*Cates v. State*, 102 S.W.3d 735 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . .17

*Cobarrubio v. State*, 675 S.W.2d 749 (Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . . . . 27

*Coble v. State*, 871 S.W.2d 192 (Tex. Crim. App. 1993)......................20, 30

*Cockrell v. State*, 933 S.W.2d 73 (Tex. Crim. App. 1996) ....................24, 25

*Coe v. State*, 683 S.W.2d 431 (Tex. Crim. App. 1984) ..........................27

*Collins v. State*, 901 S.W.2d 503 (Tex. App.—Waco 1994, no pet.) ...............14

*Coleman v. State*, 145 S.W.3d 649 (Tex. Crim. App. 2004) ...............12, 17, 18

*Coleman v. State*, 881 S.W.2d 344 (Tex. Crim. App. 1994) ...................20, 30

*Cook v. State*, 858 S.W.2d 467 (Tex. Crim. App. 1993) .........................24

*Cruz v. State*, 225 S.W.3d 546 (Tex. Crim. App. 2007) .........................24

*Cude v. State*, 716 S.W.2d 46 (Tex. Crim. App. 1986) ......................13, 16

*Daniel v. State*, 550 S.W.2d 72 (Tex. Crim. App. 1977) .........................30

*Davis v. State*, 992 S.W.2d 8 (Tex. App.—Houston [1st Dist.] 1996, no pet.) .........23

*Denton v. State*, 896 S.W.2d 580 (Tex. App.—Fort Worth 1995, no pet.).........20, 30

*Dewitt v. State*, 763 S.W.2d 524 (Tex. App.—El Paso 1988, pet. ref'd)...........20, 30

*Dixon v. State*, 928 S.W.2d 564 (Tex. Crim. App. 1996) .........................22

*Dixon v. State*, 918 S.W.2d 678, 680 (Tex. App.—Beaumont 1996, no pet.).........22

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006) ...................13, 14, 16

*Ex parte Little*, 887 S.W.2d 62 (Tex. Crim. App. 1994) .........................23

*Fields v. State*, 932 S.W.2d 97 (Tex. App.—Tyler 1996, pet. ref'd) ................26

*Flores v. State*, 756 S.W.2d 86 (Tex. App.—San Antonio 1988, pet. ref'd) ..........13

*Ford v. State*, 1 S.W.3d 691 (Tex. Crim. App. 1999) ...........................22

*Gardner v. State*, 730 S.W.2d 675 (Tex. Crim. App. 1987) .......................27

*Gallups v. State*, 151 S.W.3d 196 (Tex. Crim. App. 2004) .......................23

*Garza v. State*, 622 S.W.2d 85 (Tex. Crim. App. 1980) ...................20, 30, 31

*Gonzalez v. State*, 746 S.W.2d 878 (Tex. App.—El Paso 1988, no pet.) .............25

*Griggs v. State*, 213 S.W.3d 923 (Tex. Crim. App. 2007) ........................21

*Hackleman v. State*, 919 S.W.2d 440 (Tex. App.—Austin 1996, pet. ref'd, untimely)..13

*Heberling v. State*, 834 S.W.2d 350 (Tex. Crim. App. 1992) ......................14

*Heidelberg v. State*, 144 S.W.3d 535 (Tex. Crim. App. 2004) ....................23

*Henson v. State*, 683 S.W.2d 702 (Tex. Crim. App. 1984).......................26

*Hernandez v. State*, 819 S.W.2d 806 (Tex. Crim. App. 1991).....................26

*Hughes v. State*, 612 S.W.2d 581 (Tex. Crim. App. 1981) . . . . . . . . . . . . . . . . . . . . . . . .14

*Humason v. State*, 728 S.W.2d 363 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . . . .14

*Hyett v. State*, 58 S.W.3d 826 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). . . . . 14

*In re Steptoe*, 132 S.W.3d 434 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . .21

*Johnson v. State*, 829 S.W.2d 836 (Tex. App.—Dallas 1992, no pet.) . . . . . . . . . . . . . .15

*Johnson v. State*, 658 S.W.2d 623 (Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . . . . . .13

*Keeter v. State*, 175 S.W.3d 758 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . 23

*Kinnamon v. State*, 791 S.W.2d 84 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . 27

*Kugler v. State*, 902 S.W.2d 594 (Tex. App.—Houston [1st Dist] 1995, pet. ref'd). . . . .27

*Lagrone v. State*, 942 S.W.2d 602 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . .22

*Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . 22, 23

*Lassaint v. State*, 79 S.W.3d 736 (Tex. App.—Corpus Christi 2002, no pet.) . . . . . .13, 14

*Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . 28

*Living Ctrs of Tex. Inc. v. Penalver*, 256 S.W.3d 678 (Tex. 2008) . . . . . . . . . . . . . 25, 28

*Loredo v. State*, 159 S.W.3d 920 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . .21

*McGlothlin v. State*, 896 S.W.2d 183 (Tex. Crim. App. 1995). . . . . . . . . . . . . . . . . . . .28

*Miffleton v. State*, 777 S.W.2d 76 (Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . . . . . . 22

*Miller v. State*, 741 S.W.2d 382 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . .26

*Mohnkhouse v. State*, 861 S.W.2d 473 (Tex. App.—Texarkana 1993, no pet.) . . .20, 30, 31

*Morris v. State*, 755 S.W.2d 505 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). 20, 30

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . 25, 31

*Nichols v. State*, 754 S.W.2d 185 (Tex. Crim. App. 1988). . . . . . . . . . . . . . . . . . . . . . . 26

*Norton v. State*, 930 S.W.2d 101 (Tex. App.—Amarillo 1996, pet. ref'd). . . . . . . . . . . 26

*Patterson v. State*, 769 S.W.2d 938 (Tex. Crim. App. 1988) . . . . . . . . . . . . . . . . . . . . .18

*Rangel v. State*, 250 S.W.3d 96 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Rischer v. State*, 85 S.W.3d 839 (Tex. App.—Waco 2002, no pet.) . . . . . . . . . . . . . . . .14

*Ross v. State*, 133 S.W.3d 618 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Staten v. State*, 919 S.W.2d 493 (Tex. App.—Fort Worth 1996, pet. ref'd) . . . . . . . . . . 31

*State v. Bailey*, 201 S.W.2d 739 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . .21

*Thomas v. State*, 527 S.W.2d 567 (Tex. Crim. App. 1975) . . . . . . . . . . . . . . . . . 20, 30, 31

*Threadgill v. State*, 146 S.W.3d 654 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . 20, 30, 31

*Tucker v. State*, 990 S.W.2d 261 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . 21

*Turner v. State*, 805 S.W.2d 423 (Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . 21

*Taylor v. State*, 939 S.W.2d 148 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . 22

*Villareal v. State*, 865 S.W.2d 501 (Tex. App.—Corpus Christi 1993, pet. ref'd). . . . . . 14

*Samuel v. State*, 688 S.W.2d 492 (Tex. Crim. App. 1985) . . . . . . . . . . . . . . . . . . . . . . .23

*Simpson v. State*, 119 S.W.3d 262 (Tex. Crim. App. 2003) . . . . . . . . . . . . . . . . . . . . . .24

*Smith v. State*, 737 S.W.2d 933 (Tex. App.—Dallas 1987, pet. ref'd) . . . . . . . . . . . . . .15

*Rankin v. State*, 881 S.W.2d 14 (Tex. App.—Houston [1st Dist.] 1994, no pet.). . . . . . . 30

*Ransom v. State*, 920 S.W.2d 288 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . 26

*Rose v. State*, 752 S.W.2d 552 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . .27

*Sattiewhite v. State*, 786 S.W.2d 271 (Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . . . . 27

*Threadgill v. State*, 146 S.W.3d 654 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . 25

*Todd v. State*, 598 S.W.2d 287 (Tex. Crim. App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . .26

*Trent v. State*, 925 S.W.2d 130 (Tex. App.—Waco 1996, no pet.). . . . . . . . . . . . . . . .27

*Waldo v. State*, 746 S.W.2d 750 (Tex. Crim. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . 27

*Washington v. State*, 902 S.W.2d 649 (Tex.App.—Houston [14thDist.] 1995, pet.ref'd).13

*Wead v. State*, 129 S.W.3d 126 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . . . . . .25

*Whaley v. State*, 367 S.W.2d 703 (Tex. Crim. App. 1962) . . . . . . . . . . . . . . . . . . . . . . .20

*White v. State*, 890 S.W.2d 131 (Tex. App.—Texarkana 1994, pet. ref'd) . . . . . . . . . . 14

*Williams v. State*, 643 S.W.2d 136 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . . . . 27

*Williams v. State*, 902 S.W.2d 905 (Tex. App.—Houston [1st Dist.] 1994, pet ref'd). . . 15

*Willis v. State*, 785 S.W.2d 378 (Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . .26

*Young v. State*, 137 S.W.3d 65 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . .24

*Young v. State*, 826 S.W.2d 141 (Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . .22

*Zakkizadeh v. State*, 920 S.W.2d 337 (Tex. App.—Houston [1st Dist.] 1995,
  no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 30, 31

*Zillender v. State*, 557 S.W.2d 515 (Tex. Crim. App. 1977) . . . . . . . . . . . . . . . . . . . . . . 23

**Rules:**

Tex. R. App. P. 33.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 22

Tex. R. Evid. 103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

# STATEMENT OF THE CASE

Appellant was charged by two indictments with possession with intent to deliver cocaine (4 to 200 grams) and codeine, and that a deadly weapon was used in the commission of the offenses (CR from No. 1238767, p 8; CR from No. 1238768, p 8; RR Vol 3, pp 33-34). After a plea of not guilty a jury returned a verdict of guilty on both cases and found that defendant used or exhibited a deadly weapon during the commission of the offense (CR from No. 1238767, pp 124, 126; CR from No. 1238768, pp 103, 105). The trial court assessed punishment in each case at 25 years to run concurrently and court costs after the State and appellant announced an agreement in that regard (CR from No. 1238767, p 130; CR from No. 1238769, p 109; RR Vol 6, p 4).

This appeal follows.

# <u>ISSUES PRESENTED</u>

## Issue One

Is there legally sufficient evidence to sustain appellant's conviction?

## Issue Two

Is there legally sufficient evidence to sustain the jury finding that appellant used or exhibited a deadly weapon in the commission of the offense?

## Issue Three

The state argued in its closing statement that the only way the jury could reach a not guilty was if the jurors concluded that all of the police were lying under oath.  Was this improper and harmful argument?

## Issue Four

The trial court sustained appellant's objection to the state's closing statement that drug dealers have pit bull dogs, appellant had a pit bull (although there was not evidence offered during trial that appellant in fact had a pit bull), and therefore appellant possessed the drugs in question.  Did the trial court err in refusing appellant's request for an instruction to disregard this argument?

# STATEMENT OF FACTS

The evidence viewed in the light most favorable to the verdict establishes the following facts:

Houston Police officer Steven Bryant had seen appellant several times at 5315 Keystone, Houston, Texas (RR Vol 3, p 44-45). Officer Bryant suspected that drugs were being sold out of that location, and therefore, on October 22, 2009, he sent a confidential informant and another officer, Kimberly Jacobs, to the location to further investigate his suspicions (RR Vol 3, pp 45, 194-197). At this time, Officer Bryant thought that the location consisted of only one residential structure (RR Vol 3, p 89). In fact the location consists of two structures—the main structure and a smaller structure in the back. (This becomes an important fact to the analysis of this case, as will be shown below.) The confidential informant purchased crack cocaine at the location in question after working with Officer Jacobs on exactly how the buy should be attempted (RR Vol 3, pp 45, 52, 197). Officer Jacobs watched as she posed as the confidential informant's girlfriend (RR Vol 3, p 45, 194). Officer Jacobs testified that she saw appellant sell the confidential informant crack from the front door of the main structure (RR Vol 3, p 198).

Based on this information Officer Bryant obtained a warrant which authorized the search of:

> [A] single-family residence located at 5315 Keystone
> Houston, and Harris County Texas.    The target
> location is a one-story single-family residence on the
> north side of Keystone.  The residence is located in the
> area of Keystone and Cavanaugh.  The target location
> is location on the north side of Keystone in the 5300
> block.    The target location has the number "5315"
> posted on the south side of the location.  The entry
> door to the residence is on the south side of the
> residence and faces south.  The main entry door area is
> covered by black burglar bars.  The target location is
> constructed of wood siding that is white in color with
> red trim.  The main entry door is red in color.  The
> residence has a composite shingle roof.  (grammatical
> mistakes as found in original) (RR Vol 3, p 47; State's
> Exhibit 1).

The warrant also authorized the arrest of:

> [E]ach suspected party named and described in said
> affidavit, to wit: a black male subject whose name is
> unknown to Affiant is described as being
> approximately thirty (30) to thirty-five (35) years of
> age, 5'09" to 5'11" in height, weighing approximately
> 190 to 200 pounds, with a medium brown complexion,
> gotee and crew cut hair.  (*id.*)

Officer Bryant provided this description to the magistrate that signed the warrant

(RR Vol 3, p 128).  Although not mentioned in the warrant, there were a total of

eight individuals that were suspected and that approximately fit the description

(RR Vol 3, pp 126, 130, 132, 134-135).  An important distinguishing physical

characteristic of appellant was an obvious eye condition that Officer Bryant was

aware of before the warrant was requested (RR Vol 3, pp 165, 175).  This eye

condition is not stated in the warrant.

The warrant was signed on October 25, 2009 (State's Exhibit 1).

2

Officer Bryant was the officer in lead of the investigation, and therefore, he organized a group of officers to execute the warrant on October 27, 2009 (RR Vol 3, pp 45, 53). The group consisted of six officers in a van and three manned and marked patrol cars with officers (RR Vol 3, p 556-57). Officer Bryant did not know the name of appellant up to the point that the warrant was served (RR Vol 3, p 54). When the officers went to execute the warrant, each was assigned a specific task, and Officer Hodgie Armstrong was assigned to look for the person identified in the warrant and to look for a Black Chevy SS Impala (RR Vol 3, pp 53-55; State's Exhibit 41). The service and execution of the warrant was a serious and adrenaline charged affair because they expected to violently break into the house without the knocking and announcing, per the warrants permission (RR Vol 3, pp 59-63; State's Exhibit 1). The six officers in the van had the task of making the break-in entry (RR Vol 3, p 57). Most of the details of the entry are interesting to read, but irrelevant to the issues raised in this brief (RR Vol 3, pp 59-63). What is highly relevant are what the officers observed and found, which includes:

- Only one man inside the main house, who immediately ran, but was eventually captured (RR Vol 3, p 91);
- The Black Chevy SS in the back of the driveway (RR Vol 3, p 62);
- An unexpected structure disconnected from the main house (RR Vol 3, p 88-89), which the police concluded was a recording studio (RR Vol 3, p 113);
- The main house contained two bedrooms, kitchen, dining room, living room, and den (RR Vol 3, p 64, 66-67);
- Inside the main house, it appeared that one of the bedrooms was used as a storage area and the other as a bedroom (RR Vol 3, pp 64-67); State's Exhibits 2-13), although it did not appear to Officer Bryant "that anyone

3

was actually living in the bedroom" (RR Vol 3, p 113) because, in part, no clothing was found there (RR Vol 3, p 113); on the other hand, Officer Bryant, thought that although no one was living in the bedroom that it nevertheless "belonged" to appellant because they found his mail there, "male clothes the size of Mr. Freeman" were there, a recent Comcast bill with the same address was found, a TXU energy bill to appellant was found in the kitchen addressed to appellant for services at the addressed location (RR Vol 3, pp 103-106; State's Exhibits 55, 74, 75); however, mail from many other individuals was also found inside the main residence (RR Vol 4, p 76);

- Inside the main house, in one of the bedrooms, the police found a loaded .40 caliber Glock semiautomatic pistol sitting on top of a nightstand and ammunition (RR Vol 3, p 68, 85-88, 97; State's Exhibits 8, 73) with two baggies of marijuana next to it (RR Vol 4, pp 35-36; State's Exhibit 9 and 10), seven unopened and one opened and partially empty bottles of prescription codeine syrup inside a box (RR Vol 3, pp 70, 74; State's Exhibits 11, 49, 66);

- Inside the kitchen of the main house, the police found crack cocaine on the counter and in drawers (RR Vol 3, pp 75-78; State's Exhibits 16-20), and items that could be used to make crack cocaine "cookies" (RR Vol 3, p 80);

- After the raid settled down and the main house was secured, an officer in a patrol car saw appellant and another person exiting the unexpected structure (RR Vol 3, p 90-92);

- Inside the unexpected structure the officers found a loaded .38 caliber revolver and a rifle, both in the attic (RR Vol 3, pp 94, 98);

- Inside the black car was found a County Clerk doing business as certificate for "Full Metal Jacket Records" under appellant's name (RR Vol 3, 118; State's Exhibit 61), and bank records of Full Metal Jacket Records with the address for the property searched (RR Vol 3, 118; State's Exhibit 62).

Appellant's mother testified for the defense and clarified that she owned the

property for 42 years, was still the owner at the time of trial (RR Vol 4, p 49), and

that she is currently making mortgage payments on the home (RR Vol 4, p 69).

She lived in the house for many years, and moved out approximately five years

before trial (RR Vol 4, p 49). She said that she goes to the house every week or so

to clean and pick up mail that arrives there in her name, and that it looks about the

4

same as when she moved out (RR Vol 4, p 50, 52, 53, 71, 75). She said that many people, including Kyle Williams, John Pennington, Robert Barxter, Ernest Baxter, Carol Freeman, Roderick Griffin, Ebony Simons, and Alton Mathis receive mail there (RR Vol 4, p 76). She explained that Kyle Williams, John Pennington, and Alton Mathis live there and that her son, appellant, visits frequently (RR Vol 4, pp 50-51). John Pennington is her son, John is Alton's father, and therefore Alton is her grandson (RR Vol 4, p 57). She further explained that appellant goes to the house often because of the recording studio he built in the back (RR Vol 4, p 51). She said that whenever she goes there that there are generally several people present (RR Vol 4, pp 51-52).

Another event that was testified to is irrelevant to the substantive issue of guilty, but is relevant to whether the State's closing argument was improper, was that an officer discharged a shotgun after seeing two pit bull dogs in the back. The exact testimony of Officer Bryant in this regard is the following:

> State:  When you entered the residence, were there any, I guess, unusual circumstances or something that happened that made this scene especially volatile?
>
> A:  Yes. When we were trying to breach the burglar bar doors, the blinds moved. Members of my team broke out the window. At this point the marked patrol guys have surrounded the sides into, you know, separate yards. One person exits out of the building and takes off and they catch him. We clear the residence and find nobody inside. Then they, the marked patrol units, remain outside and observe Mr. Freeman come out of the secondary structure.

5

Q:     A moment ago you testified that everything was calming down. Was there a situation involving animals at the location?

A:     Yes. Once we realized that there's now a second structure in the back yard where people could be hiding, we thought it was best for us to clear the structure for any other people that could be in there. While we're getting the gear to go together out and clear this structure obstructed by dogs in the yard, pet bulls, two people exit out of the structure. And we're in the back of the residence ordering them to come inside to us.

Q:     Were you eventually able to contain the situation involving the pit bulls and the extra people?

A:     Yes. There were two people in the back yard and we're giving the verbal commands –

*   *   *   *

Q:     What did you do to calm the situation with the pit bulls and the people in the back building?

A:     When they – one person came inside the residence was taken into custody, the other person came in, but the door wasn't able to close. The lead person with the shotgun, Officer Price, saw the dogs coming towards us. He discharged his firearm to protect all the officers on the scene and these guys -- (RR Vol 3, pp 91-92).

In its closing argument, the State argued facts outside the record and the trial court sustained appellant's objections, but denied his request for an instruction to disregard. The exact exchange is as follows:

State:     And we talked about it also in jury selection, the fact that I used the newspaper example. And how do you know? Well, what did we talk about? Scales? That's in the State's photograph. The cutting instrument? That's there. And cash. He was found with $820 in cash –

Defense: Objection. That's outside – that's not accurate, outside the evidence.

6

Court:     All right.  Well, the jury will recall the evidence.  Stay in the record.

State:     This is his cash.  It's right here.  You can read the inventory on the front of it.  Drugs, cash.  Oh, let's not forget all the guns.  But we'll get back to that because what do drug dealers use to protect their product?  They use guns.  They use pit bulls.  That happened to be there, too.

Defense:  There's no evidence – outside the scope – outside the record.

Court:     Sustained.

Defense:  Move for verdict – instruction regarding the pit bulls.

Court:     All right.  That will be denied.  Stay in the record, please.  (RR Vol 4, pp 101-102).

Also in closing argument, the State made an extended legally erroneous argument that for the jury to acquit appellant they would have to conclude that all of the police officers committed perjury in their testimony during the trial of the case.  Specifically, the State said the following:

> Now, in order for you to find Marcus Freeman not guilty in this case, you would have to go back to that jury room and you would have to decide amongst yourselves that those police officers lied.  That every single one of them came in here and took the witness stand and perjured themselves.  You would have to believe that Officer Maxwell was willing to risk 17 years of his career for one Defendant.  You would have to believe that the two officers, Armstrong and Officer Kim Jacobs who worked undercover, who have taken years to get that training and the trust that the city requires to ten send them out not, in large patrol cars, not in uniforms, where they put their lives at risk.  Let's be real honest.  They go to people's homes.  That have assault rifles and revolvers and pistols and sell drugs and they do that for us.  So, in order to find him not guilty, you have to believe that

every single one of those people was willing to come in here and lie.

And why would they do that? That is their job. That is what they're tained to do. They're still here. They work at night. They come every day because they care about this case. They care about the job that they did. And they want you to believe them because they told the truth.

You would have to go back there and believe that they went and conducted surveillance on 5315 Keystone. You would have to believe that they got information from their confidential informant. You would have to believe that then they bought drugs from someone. But instead of wanting to get the real suspect, the real person that sold the drugs that really matches the description of the person with a crew cut being – versus having a bald head, that they said no, no, no. We don't want the real drug dealer. Why would we want to arrest him? We want to arrest Marcus Freeman. For what reason? That's what they do. (RR Vol 4, pp 106-107).

Appellant moved for a directed verdict and in response to appellant's request for a directed verdict regarding the deadly weapon allegations, the State said:

Your Honor, the State has put forward more than a scintilla of evidence. And I could put them on the ELMO for the Court. But on State's Exhibits 9 and 10 we can see the firearm right next to the marijuana. It's found on the nightstand less than a foot from the codeine which is alleged in this case. We've presented at least a prima facie showing that a reasonable juror could find beyond a reasonable doubt that a deadly weapon was used during the course and commission of this offense.

Furthermore, Officer Bryant, I believe Officer Jacobs testified that this firearm in particular is a deadly weapon and that it's capable of causing death or serious bodily injury. I believe we have met that

8

> showing here today that there is at least a fact issue
> that could go to the jury. (RR Vol 4, pp 37-38).

The jury returned a guilty verdict on both cases, and the trial court sentenced appellant to 25 years on each case to run concurrently. (CR from No. 1238767, pp 124, 126, 130; CR from No. 1238768, pp 103, 105, 109).

# SUMMARY OF ARGUMENT

Appellant's convictions for possession of narcotics in both cases should be set aside and judgments of acquittal entered because there are not affirmative links connecting appellant to the narcotics in question—that is, there is legally insufficient evidence to support the convictions.

Alternatively, there is legally insufficient evidence to sustain the findings in both cases that a deadly weapon was used or exhibited in the commission of the offenses.

Lastly, the convictions should be set aside and a new trial ordered because the State made two improper and harmful closing arguments. In this regard, one of those arguments was not complained about in the trial court but should nevertheless be considered in this appeal under the principles announced in *Living Ctrs of Tex. Inc. v. Penalver*, 256 S.W.3d 678, 680-81 (Tex. 2008), which although a civil case, is applicable.

10

# ARGUMENT AND AUTHORITIES

## I.    Introduction.

The issues raised in this brief first addresses the legal sufficiency of the evidence to support the finding that appellant exercised care, control and management over the drugs in question—the "affirmative links" problem.   The brief then turns to the legal sufficiency of the evidence that appellant used or exhibited a deadly weapon in the commission of the possession of narcotics offenses.   Lastly, the brief addresses two arguments made by the State that appellant believes were improper and resulted in an unfair trial.

## II.    Sufficiency of the evidence.

| Issue One |
|---|
| (restated) |
| Is there legally sufficient evidence to sustain appellant's conviction? |

### a.    *Standard of review.*

#### i.    *Legal sufficiency of the evidence.*

Due process requires that a conviction be supported by legally sufficient evidence.[1]   Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the

---

[1]    *See Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

essential elements of the offense beyond a reasonable doubt.[2]  The United States Supreme Court said of legal sufficiency review:

> Sufficiency review is designed to correct the inevitable factual errors that will occur in trials, in spite of the burden of proof which is designed to hopefully, lessen the number of erroneous factual determinations by jurors. *In re Winship*, 397 U.S. 358, 358 (1970).

Legal sufficiency review "does not require scrutiny of the reasoning process actually used by the factfinder—if known." *Jackson v. Virginia*, 443 U.S. 307, 319 n.13 (1979). Rather, the scrutiny is of the evidence that could be the only objective basis of the factfinder's reasoning process. The absolute minimum that due process will tolerate as an objective basis for that reasoning process is legal sufficiency review, *e.g.*, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[3]

The defendant's remedy when he has been convicted with legally insufficient evidence is an acquittal.[4]

### ii.   *Affirmative links doctrine.*

To sustain a conviction for possession of controlled substances, the State must establish that the defendant knew of the controlled substance's existence, and

---

[2]   *See Jackson*, 443 U.S. at 319.

[3]   *Jackson*, 443 U.S. at 322; *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004).

[4]   *Burks v. United States*, 437 U.S. 1, 17-18 (1978); *Green v. Massey*, 437 U.S. 19, 24 (1978).

12

that he exercised care, control and management over it.[5]  When a defendant is charged with possession of a controlled substance, and he is not in exclusive possession of the place where the controlled substance is found he must be "affirmatively linked" with the controlled substance he allegedly possessed to sustain a conviction.[6]  The following factors are useful in performing an affirmative links analysis:

- defendant's presence when a search warrant is executed;
- whether the contraband was in plain view;
- defendant's proximity to and the accessibility of the narcotics;
- whether defendant was under the influence of narcotics when arrested;
- whether defendant possessed other contraband when arrested;
- whether defendant made incriminating statements when arrested;
- whether defendant attempted to flee;
- whether defendant made furtive gestures;
- whether there was an odor of the contraband;
- whether other contraband or drug paraphernalia was present;
- whether defendant owned or had the right to possess the place where the drugs were found;
- whether the place the drugs were found was enclosed;

---

[5]  *Johnson v. State*, 658 S.W.2d 623, 627 (Tex. Crim. App. 1983); *Hackleman v. State*, 919 S.W.2d 440, 445 (Tex. App.—Austin 1996, pet. ref'd, untimely filed) (where the defendant had a visible and measurable quantity of controlled substance in a plastic bag found in his jeans the evidence was sufficient); *Dixon v. State*, 918 S.W.2d 678, 680 (Tex. App.—Beaumont 1996, no pet.) (the defendant acquitted on appeal where he was a passenger in a vehicle stopped and 15 pounds of marijuana was in the speaker in the truck); *Washington v. State*, 902 S.W.2d 649, 652 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd); *Flores v. State*, 756 S.W.2d 86, 87 (Tex. App.—San Antonio 1988, pet. ref'd).

[6]  *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006); *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986); *Brazier v. State*, 748 S.W.2d 505, 508 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

13

- whether defendant was familiar with the type of contraband found;
- whether defendant attempted to conceal the contraband.[7]

Despite this list of factors, there is no set formula necessitating a finding of an affirmative link, but rather affirmative links are established by the totality of the circumstances.[8]   Where there is a failure of the State to affirmatively link the defendant to the contraband the conviction must fail.[9]

### iii.   Proof regarding intent to deliver.

An actual transfer or delivery, as commonly understood, contemplates the manual transfer of property from the transferor to the transferee or to the transferee's agents or to someone identified in law with the transferee.[10]   Intent to deliver a controlled substance case may be proven by circumstantial evidence,

---

[7]    *Evans*, 202 S.W.3d at 162 n.12; *Humason v. State*, 728 S.W.2d 363, 367 (Tex. Crim. App. 1987) (defendant under the influence); *Hughes v. State*, 612 S.W.2d 581, 582 (Tex. Crim. App. 1981) (in plain view and odor); *Reed v. State*, 158 S.W.3d at 47 n.1; *Rischer v. State*, 85 S.W.3d 839, 843 (Tex. App.—Waco 2002, no pet.); *Armstrong v. State*, 82 S.W.3d 444, 449 (Tex. App.—Austin 2002, no pet.); *Lassaint v. State*, 79 S.W.3d 736, 740-741 (Tex. App.—Corpus Christi 2002, no pet.) (listing 17 possible factors); *Villareal v. State*, 865 S.W.2d 501, 503-504 (Tex. App.—Corpus Christi 1993, pet. ref'd); *Brazier v. State*, 748 S.W.2d at 508.

[8]    *Rischer*, 85 S.W.3d at 843; *Hyett v. State*, 58 S.W.3d 826, 830-831 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

[9]    *Lassaint*, 79 S.W.3d at 746 (acquitted where the court of appeals concluded there were no affirmative links); *Collins v. State*, 901 S.W.2d 503, 506 (Tex. App.—Waco 1994, no pet.) (conviction reversed where the defendant was in a house when a search was executed on a small house; cocaine and heroin was found in one of the bedrooms; the defendant was living off and on in the house, with the electric bill in his name; needles and unidentified drug paraphernalia were found "all over" the house, and the narcotics were in plain view if one were standing inside the bedroom); *White v. State*, 890 S.W.2d 131, 139 (Tex. App.—Texarkana 1994, pet. ref'd) (insufficient evidence where the defendant lived next door to vacant lot on which there was a boat with a tackle box containing cocaine and the defendant was standing 16 feet from the boat when the police arrived and the defendant had marijuana inside his house).

[10]    *Heberling v. State*, 834 S.W.2d 350, 354 (Tex. Crim. App. 1992).

14

including the evidence surrounding its possession.[11]  The court may consider such factors as:

- the nature of the location where the defendant was arrested;
- the quantity of the controlled substance in the defendant's possession;
- the manner of packaging;
- the presence of drug paraphernalia – for either drug use of sale;
- defendant's possession of large amounts of cash;
- defendant's status as a drug user.[12]

### b.    *Analysis.*

On October 22, 2009, Officer Jacobs witnessed appellant sell a small amount of narcotics to the confidential informant (RR Vol 3, p 198).  On October 27, 2009, the warrant was executed (State's Exhibit 1).  This is evidence of his selling drugs on one occasion but it does not adequately link him to the drugs for which his is charged because was not in exclusive possession of the place where the drugs were found.[13]

The gap between the sale of the small amount of drugs and the execution of the warrant was five days, and therefore the link of this point of evidence is weak.  The other factors commonly applied in an affirmative links analysis, but applied in this case are the following:

---

[11]  *Branch v. State*, 529 S.W.2d 324, 325 (Tex. Crim. App. 1979); *Williams v. State*, 902 S.W.2d 905, 907 (Tex. App.—Houston [1st Dist.] 1994, pet ref'd); *Smith v. State*, 737 S.W.2d 933, 941 (Tex. App.—Dallas 1987, pet. ref'd).

[12]  *Williams v. State*, 902 S.W.2d at 507; *Branch v. State*, 599 S.W.2d at 325; *Johnson v. State*, 829 S.W.2d 836, 837 (Tex. App.—Dallas 1992, no pet.).

- Defendant was not at the location where the drugs were located, and therefore the drugs were not in plain view of appellant.

- Appellant's proximity and accessibility to the drugs was that they were in another structure. There is no evidence that appellant had been in the main structure since the sale of the small amount of drugs five days earlier, and therefore the proximity and accessibility element is weak.

- Appellant was not under the influence of narcotics when arrested.

- He did not have narcotics on his possession at the time of his arrest.

- Appellant made no incriminating statements, he did not flee, and he made no furtive gestures. However, another suspect did flee when the police arrived.

- There is no evidence that there was an odor of narcotics.

- There was other drug paraphernalia, but only inside the main house.

- The evidence showed that appellant's mother owned the house and that many people had a right of possession and use to the property. The cable and electric bill to the property was in appellant's name, but it was clear that his primary or only reason for having the bills in his name was to provide the unexpected structure with television, computer-internet service, and electricity. Appellant used the unexpected structure as a recording studio. The fact that mail with appellant's name on it was inside the main structure is of little to no probative value as to whether he used the main structure because many other people received mail there, and it was obvious from the surrounding circumstances that the mail for the back structure would be post marked with the same address as the main structure. The claim by the police that appellant had his cloths in the home is very weak, even untenable, because the few cloths pointed to by the officers for this assertion could have been any of the many other seven suspects that were of interest to the officers.

- The main structure where the drugs were found was enclosed.

- Appellant did not attempt to conceal the narcotics, and was in the other structure at the time the narcotics were found.

None of the traditional affirmative links factors analyzed above apply to the

facts of this case so as to tie appellant to the drugs located in the house. The only

---

[13] *Evans*, 202 S.W.3d at 161-62; *Brown*, 911 S.W.2d at 748; *Cude*, 716 S.W.2d at 47; *Brazier*, 748 S.W.2d at 508.

fact that is truly incriminating is that Officer testified that she witnessed appellant sell a small user quantity to the confidential informant five days prior to the execution of the search warrant.  Although this is clearly evidence of delivery of that small amount of drugs on October 22, it is too remote in time to affirmatively link appellant to the drugs located in the main structure on October 27 when there were so many other suspected individuals with access to the main structure. Accordingly, there is insufficient evidence to support the two convictions for possession with intent to deliver and both should be set aside.

### III.   The deadly weapon finding.

> **Issue Two**
> **(restated)**
>
> Is there legally sufficient evidence to sustain the jury finding that appellant used or exhibited a deadly weapon in the commission of the offense?

When a defendant appeals a deadly weapon finding, the standard of review is legal sufficiency of the evidence, namely, whether the evidence supports a finding that the item in question was used or exhibited as a deadly weapon.[14]  In making the finding of whether there is legally sufficient evidence to support a

---

[14]   *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) ("Because Appellant is challenging the legal sufficiency of the evidence, the Court must review the evidence in the light most favorable to the verdict."  "In doing so, we must determine whether a rational trier of fact could have found beyond a reasonable doubt that Appellant used the guns to facilitate possession and delivery of narcotics.");*Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).

deadly weapon finding, there are two possible focal points: "used" or "exhibited", each of which is different.[15]

The facts in this case show that a weapon was found in the main structure near the narcotics in question and two weapons were found in the attic of the structure in the back were appellant was actually located. Regarding the weapon found in the main house, the following affirmative links discussion is applicable to appellant, who was located in the back structure at the time the search warrant was executed. It is an extreme stretch to conclude that appellant used or exhibited the weapons in the main property in the commission of possession of narcotics. The State only argued in this regard that the weapons were used or exhibited because they were located near the two baggies of marijuana, and therefore, not related to the cocaine or codeine.

Regarding the weapons found in the unexpected structure, they were in the attic but the drugs were in the main house. Use or exhibition of those weapons in the commission of the alleged offense is an impossible stretch. Therefore, the deadly weapons findings should be set aside.

---

[15] *Coleman v. State*, 145 S.W.3d at 652 (sufficient evidence that the defendant "used" a deadly weapon to facilitate possession and delivery of narcotics although the defendant was not in the house where the weapons were – the drugs were in a closed safe in the bedroom where the weapons were found); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1988) ("use" can mean "even simple possession of a deadly weapon, if such possession facilitates the associated felony").

## IV. Closing argument error.

---

### Issue Three
### (restated)

The state argued in its closing statement that the only way the jury could reach a not guilty was if the jurors concluded that all of the police were lying under oath. Was this improper and harmful argument?

---

### Issue Four
### (restated)

The trial court sustained appellant's objection to the state's closing statement that drug dealers have pit bull dogs, appellant had a pit bull (although there was not evidence offered during trial that appellant in fact had a pit bull), and therefore appellant possessed the drugs in question. Did the trial court err in refusing appellant's request for an instruction to disregard this argument?

---

### *a.* *Introduction.*

There were two arguments made by the State that appellant argues herein were improper and resulted in an unfair trial. One of those arguments was preserved in the trial court. The other was not. The unpreserved argument raised the question of whether it may be argued on appeal. A recent Texas Supreme Court case holds that improper closing argument error may be raised on appeal even if not first raised in the trial court. This is because of the special problems presented by objecting in the middle of a narrative closing argument when the objector has on idea of what is to come and the inherent problem of un-ringing the bell. More on this below.

19

### b.     The law of what is permissible in closing argument.

There are four generally permissible areas of closing argument: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement.[16] Therefore, it is impermissible to refer to information not introduced into evidence, commonly called, "going outside the record"[17] or make arguments that are designed to arouse passions and prejudices of the jury.[18]

---

[16]   *Bibgy v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994); *Coleman v. State*, 881 S.W.2d 344, 358 (Tex. Crim. App. 1994); *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993).

[17]   *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004) (improper argument where the prosecutor said, in part, "I've been a prosecutor for 30 years I've had two cases with fingerprints, this is the third."); *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990); *Daniel v. State*, 550 S.W.2d 72, 73 (Tex. Crim. App. 1977) (argument that a witness was unable to appear because he had been shot improper); *Whaley v. State*, 367 S.W.2d 703, 704 (Tex. Crim. App. 1962) (comment on an inadmissible confession improper); *Denton v. State*, 896 S.W.2d 580, 584 (Tex. App.—Fort Worth 1995, no pet.) (argument that the defendant told his wife, immediately before shooting the victim, that he was going to kill the victim and then he would shoot her improper where not in the record); *Dewitt v. State*, 763 S.W.2d 524, 526 (Tex. App.—El Paso 1988, pet. ref'd) (In DWI prosecution the State went outside the record by arguing, "Every 20 minutes someone is killed as a result of an intoxicated drunk."); *Morris v. State*, 755 S.W.2d 505, 509 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (placing value on narcotics seized without support in the evidence improper).

[18]   *Garza v. State*, 622 S.W.2d 85, 93 (Tex. Crim. App. 1980) (heroin "will turn young girls into prostitutes" improper); *Thomas v. State*, 527 S.W.2d 567, 567 (Tex. Crim. App. 1975) (argument that the defendant was affecting other lives improper based on evidence of a single drug sale improper); *Zakkizadeh v. State*, 920 S.W.2d 337, 341 (Tex. App.—Houston [1st Dist.] 1995, no pet.) ("In this country we don't allow foreigners to rape little girls" improper); *Staten v. State*, 919 S.W.2d 493, 495 (Tex. App.—Fort Worth 1996, pet. ref'd) (drugs sold by the defendant could have gone to child or pregnant mother improper); *Mohnkhouse v. State*, 861 S.W.2d 473, 477-478 (Tex. App.—Texarkana 1993, no pet.) (argument that drugs "[c]ould have gone to pregnant mother and school kids" improper).

### c.     *Preservation of error.*

#### i.     *The general requirement that an objection be made in the trial court before the error may be raised on appeal.*

Generally speaking, error must be preserved in the trial court before it may be raised on appeal.[19]   A procedurally correct request, objection, or motion is made by: (1) *timely* request, objection, or motion; (2) that states the grounds with sufficient *specificity* to understand the grounds of the request, objection, or motion unless the grounds are apparent from the *context*; (3) the request, objection, or motion *complies with the particular rules* regarding the request, objection, or motion; and (4) the trial court either expressly or implicitly *ruled on* the request, objection, or motion, or the trial court refused to rule.[20]

The timeliness requirement applies to all requests, objections, and motions.[21]   Oral requests, objections, and motions are typically made during trial

---

[19]     Tex. R. App. P. 33.1; Tex. R. Evid. 103(a); *State v. Bailey*, 201 S.W.2d 739, 743 (Tex. Crim. App. 2006); *In re Steptoe*, 132 S.W.3d 434, 434-435 (Tex. Crim. App. 2004); *Resendez v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003).

[20]     Tex. R. App. P. 33.1; Tex. R. Evid. 103(a); *Loredo v. State*, 159 S.W.3d 920, 924 (Tex. Crim. App. 2004) ("appellant's silence resulted in his failure to inform the trial court of his complaint at a time and in a manner that it could be corrected"); *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999) ("[W]hen the trial court rules against an appellant's request, objection or motion, further action is generally not required to preserve a complaint for appellate review."); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991) ("To preserve error for appellate review, the complaining party must make a timely, specific objection.").

[21]     Tex. R. App. P. 33.1(a)(1) (A "prerequisite to presenting a complaint for appellate review" is that "the complaint was made to the trial court by a timely request, objection, or motion".); *Rangel v. State*, 250 S.W.3d 96, 98 (Tex. 2008) (per curiam) ("A thorough review of the record reveals that all of the evidence—most importantly, the videotape and the evidence surrounding the interview—that would be required to properly analyze the court's ruling was admitted after the trial judge made his ruling on Rangel's confrontation objection." "We refuse to examine the propriety of the trial judge's ruling based on evidence that the trial judgment had no opportunity to consider when he made his ruling."); *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (holding that a motion for mistrial that was not timely and specific did not

and must be made as soon as the ground for the request, objection, or motion becomes apparent.[22]

An objection is sufficient to preserve error if it appraises the trial court and opposing counsel of the nature of the complaint. In this regard, there are no technical considerations or form of words to be used in making an objection.[23] "Straightforward communication is plain English will suffice."[24] A general objection will preserve error when it is clear from the context in which it was made that the trial court understood the objection when making its ruling.[25] A

---

preserve error); *Young v. State*, 137 S.W.3d 65, 65-66 (Tex. Crim. App. 2004) (motion for mistrial must be timely).

[22]   *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) ("An objection should be made as soon as the ground for objection becomes apparent. . . .  If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived.").

[23]   *E.g. Cameron v. State*, 241 S.W.3d 15, 22 (Tex. Crim. App. 2007) ("Based on the record, it is evident that the discussion regarding the admissibility of the evidence was indeed specific enough to apprise the trial judge that the former attorney's work product and was not privileged attorney-client communication."); *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999) (regarding a *Batson* challenge, the defendant failed to preserve error by not correcting a factually incorrect statement by the prosecutor); *Caballero v. State*, 919 S.W.2d 919, 921 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ("An objection to evidence as 'inflammatory' and 'prejudicial' is effectively an objection that the probative value of the evidence is substantially outweighed by its prejudicial effect.").

[24]   *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (The court goes not to say: "The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts.  As regards specificity, all a party has to do to avoid forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.  Of course, when it seems from the context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the even have been lost.  But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.").

[25]   Tex. R. App. P. 33.1(a)(1)(A) (stating objection preserved if "the specific grounds were apparent from the context"); Tex. R. Evid. 103(a)(1) (an objection must state "the specific ground of objection, if the specific ground was not apparent from the context"); *Taylor v. State*, 939 S.W.2d 148, 154-55 (Tex. Crim. App. 1996) (grounds of objection, while imprecise, were

context objection is made—be it a general objection or something more verbose—when the objection is phrased in any manner that sufficiently appraises the trial court and opposing counsel of the nature of the complaint.[26] A context objection requires the appellate court to consider the particular facts of each case to ascertain whether the particular objection raised on appeal was the same objection everyone in the trial court had in mind.[27]

---

apparent from the context); *Dixon v. State*, 928 S.W.2d 564, 564 (Tex. Crim. App. 1996) (Error preserved when the State questioned a witness about charges pending against the defendant, the defendant's attorney stated, "I'm going to object to that," and the trial court responded, "For the reasons stated previously, I will overrule the objection."); *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993) ("an otherwise insufficient general objection will be sufficient where the correct ground of exclusion is obvious to the trial court"); *Lankston v. State*, 827 S.W.2d 907, 908 (Tex. Crim. App. 1992); *Miffleton v. State*, 777 S.W.2d 76, (Tex. Crim. App. 1989) (Objection referring to Article I, Section 10 of the state constitution broad based, but it was apparent that the trial court understood the defendant was invoking the state privilege against self-incrimination where the trial court in overruling the objection stated, "The objection under – I mean these rulings to apply to these Texas constitutional analogues. The objection under the Fifth Amendment is overruled because it is not testimonial evidence."); *Zillender v. State*, 557 S.W.2d 515, 571 (Tex. Crim. App. 1977) (general objection sufficient where the specific ground was apparent from the record).

[26]   *Keeter v. State*, 175 S.W.3d 758, 761 (Tex. Crim. App. 2005) (*Brady* objection not clear from the motion for new trial or from the arguments of counsel and therefore not preserved for appellate review); *Gallups v. State*, 151 S.W.3d 196, 198 n.1 (Tex. Crim. App. 2004) (Objection based on article 14.05(1) preserved although the motion to suppress cited article 14.04 because it was litigated during the hearing.); *Ex parte Little*, 887 S.W.2d 62, 65 (Tex. Crim. App. 1994); *Young v. State*, 826 S.W.2d 141, 150 (Tex. Crim. App. 1991); *Davis v. State*, 992 S.W.2d 8, 10 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

[27]   *Heidelberg v. State*, 144 S.W.3d 535, 538 (Tex. Crim. App. 2004) ("because one must look to the context of each case in order to see if the ground of the objection was apparent, we must look at each situation individually as it arises"); and *compare* 144 S.W.3d at 542-543 (holding that the context of the objection was *not* clear that the defendant's objection referred to the federal *and* state constitution), *with Samuel v. State*, 688 S.W.2d 492, 494-495 (Tex. Crim. App. 1985) (holding the context of the objection was clear that the defendant's objection referred to the federal *and* state constitution) *and Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977) (same).

ii.   *The trial court objection requirement applied to closing argument error.*

The general preservation rule as applied to closing argument error provides additional requirements; thus, to preserve error for improper jury argument, defendant must (1) make a timely and specific objection; (2) if the objection is sustained, request a curative instruction; and (3) if the instruction is given, move for a mistrial.[28]   A motion for mistrial, without first requesting an instruction to disregard, preserves error where the error is so serious as to warrant a mistrial and not just an instruction to disregard.[29]   If defendant does not object to a jury

---

[28]   *Bible v. State*, 162 S.W.3d 234, 247-248 (Tex. Crim. App. 2005) (the defendant waived the complaint regarding the state's closing argument that, according to the defendant, misdefined the term "intentionally"); *Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003); *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002) (reaffirming the rule that even if argument is such that it could not be cured by an instruction, the defendant is required to object and request a mistrial); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that precedent allowing a defendant to complain for the first time on appeal about an unobjected to, erroneous jury argument that was so prejudicial that it could not have been cured by an instruction to disregard was expressly overruled); *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Sosa v. State*, 845 S.W.2d 479, 484 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

[29]   *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) ("A request for an instruction to disregard is essential to the preservation of error only when such an instruction could have had the effect desired by the requesting party. If such an instruction would be sufficient—that is, if the harm caused by the objectionable statements is incurable—then the defendant is entitled to a mistrial, and the denial of the motion for mistrial is sufficient by itself to preserve error for appellate review."); *Barnett v. State*, 189 S.W.3d 272, 278 (Tex. Crim. App. 2006) ("And, as the court of appeals correctly held, if an objection and instruction to disregard would not have been sufficient to cure the error, the appellant was not required to undertake those steps first."); *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) ("[T]he request for an instruction that the jury disregard an objectionable occurrence is essential only when the such (sic) an instruction could have had the desired effect, which is to enable the continuation of the trial by a (sic) impartial jury.  The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been 'cured' by such an instruction.  But if an instruction could not have has such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint for appeal.").

24

argument, he forfeits his right to complain about the argument on appeal.[30]   An argument on appeal challenging the propriety of a closing argument made at trial must be the same argument as that asserted in the trial court.[31]

> iii.   *The recent Texas Supreme Court jurisprudence regarding closing argument error raised for the first time on appeal.*

The Texas Supreme Court has recently held that extreme jury argument, being fundamental error, may be raised for the first time on appeal.  *Living Ctrs of Tex. Inc. v. Penalver*, 256 S.W.3d 678, 680-81 (Tex. 2008) (per curiam).

### d.   *Harmless error analysis as applied to improper closing arguments.*

When an improper argument is a non-constitutional violation, there are three factors that should be applied in determining if the error is harmless: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).[32]   If argument exceeds proper jury argument, it is not reversible error unless, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the

---

[30]   *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Gonzalez v. State*, 746 S.W.2d 878, 879-81 (Tex. App.—El Paso 1988, no pet.) (concluding after extensive research, the rule that incurable argument is reviewable without a trial objection is "the rule that never was.").

[31]   *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).

[32]   *Threadgill v. State*, 146 S.W.3d 654, 666-667 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

defendant into the trial proceedings.[33]   Stated differently, erroneous jury argument does not require reversal unless it is "manifestly improper, harmful and prejudicial when considered with record as a whole."[34]   The error is also examined in context of the entire argument.[35]   Where there is a reasonable possibility that the improper argument might have contributed to the conviction or punishment assessed, the error is reversible.[36]   An instruction to disregard generally cures any improper jury argument.[37]   "Unless the argument was so prejudicial that an instruction to disregard could not have removed its ill effects from the minds of the jury, reversal will not result."[38]

Generally the trial court's instruction to disregard cures any error caused by the admission of improper testimony or evidence, except in extreme cases where it appears that the state clearly used the question or evidence to inflame the minds of the jurors and its character suggests the impossibility of withdrawing the

---

[33]   *Willis v. State*, 785 S.W.2d 378, 385 (Tex. Crim. App. 1989); *Miller v. State*, 741 S.W.2d 382, 392 (Tex. Crim. App. 1987); *Todd v. State*, 598 S.W.2d 287, 297 (Tex. Crim. App. 1980); *McKay v. State*, 707 S.W.2d 23, 38 (Tex. Crim. App. 1985); *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988).

[34]   *Norton v. State*, 930 S.W.2d 101, 104 (Tex. App.—Amarillo 1996, pet. ref'd); *Burk v. State*, 652 S.W.2d 788, 789 (Tex. Crim. App. 1983).

[35]   *Gaddis v. State*, 753 S.W.2d at 398; *Henson v. State*, 683 S.W.2d 702 (Tex. Crim. App. 1984).

[36]   *Allridge v. State*, 762 S.W.2d at 110; *Fields v. State*, 932 S.W.2d 97, 110 (Tex. App.—Tyler 1996, pet. ref'd).

[37]   *Ransom v. State*, 920 S.W.2d 288, 303 (Tex. Crim. App. 1994); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987); *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991).

[38]   *Nichols v. State*, 754 S.W.2d 185, 200 (Tex. Crim. App. 1988).

26

impression produced on their minds.[39]   Stated differently, error is cured by an instruction to disregard unless the remark was so inflammatory that its prejudicial effect could not be reasonably removed from the minds of the jurors by the instruction given.[40]   Inadmissible evidence, unembellished by the state, is incurable if it is so inflammatory as to undermine the efficacy of the trial court's instruction to disregard.[41]   In applying this general rule, "it is necessary to judge each such issue upon the particular and unique facts of a case."[42]   The following non-exhaustive factors are helpful in determining whether an instruction to disregard cured error:

- the nature of the error;
- the persistence of the prosecution in committing the error;
- the flagrancy of the violation;
- the particular instruction given;
- the weight of the incriminating evidence;
- the harm to the defendant as measured by the severity of the sentence.[43]

---

[39]   *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996); *Abdnor v. State*, 871 S.W.2d 726, 740 (Tex. Crim. App. 1994); *Sattiewhite v.  State*, 786 S.W.2d 271, 278 (Tex. Crim. App. 1989); *Rose v. State*, 752 S.W.2d 552, 554 (Tex. Crim. App. 1987) (jury charge case regarding parole); *Waldo v. State*, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988); *Gardner v. State*, 730 S.W.2d 675, 696-697 (Tex. Crim. App. 1987); *Coe v. State*, 683 S.W.2d 431, 436 (Tex. Crim. App. 1984); *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex. Crim. App. 1983); *Kugler v. State*, 902 S.W.2d 594, 596-597 (Tex. App.—Houston [1st Dist] 1995, pet. ref'd).

[40]   *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex. Crim. App. 1990); *Trent v. State*, 925 S.W.2d 130, 133 (Tex. App.—Waco 1996, no pet.).

[41]   *Gardner v. State*, 730 S.W.2d 675, 697 (Tex. Crim. App. 1987).

[42]   *Williams v. State*, 643 S.W.2d 136, 138 (Tex. Crim. App. 1982).

[43]   *Waldo*, 746 S.W.2d at 754.

### *e.    Discussion.*

#### *i.    The cops-are-liars argument.*

The initial question regarding this argument is whether the failure to raise

the complaint in the trial court is a procedural bar. The Texas Supreme Court

would hold that it is not. *See Living Ctrs of Tex. Inc.*, 256 S.W.3d at 680-81.

Normally individuals charged with crimes are provided with more protection in

court proceedings than individuals sued in private civil litigation; the rational

behind these heightened protections are to decrease the likelihood of the manifest

injustice created by the conviction of an innocent person.   Conviction of the

innocent is such an unacceptable situation that the justice system's basic

overriding purpose of ascertaining the truth[44] succumbs to the ancient policy

reflected in Blackstone's Ratio—that it is better that ten guilty persons escape than

that one innocent suffer[45]—which has resulted in our having "deliberately chose to

---

[44]    *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2593 (1986) (Powell, J., concurring in judgment); *United States v. Leon*, 468 U.S. 897 (1984); *Tehan v. United States*, 382 U.S. 406 (1966) ("The basic purpose of a trial is the determination of truth."); *Young v. State*, 8 S.W.3d 656, 667 (Tex. Crim. App. 2000) (McCormick, J., dissenting); *McGlothlin v. State*, 896 S.W.2d 183, 187 (Tex. Crim. App. 1995); *but see Leday v. State*, 983 S.W.2d 713, 724-725 (Tex. Crim. App. 1998) (Stating that determining truth is not always "the only objective of our law of criminal procedure" because we "as a people have deliberately chosen to adopt laws which interfere with the truth seeking function of the criminal trial" and chronicling an impressive list of laws that thwart the criminal trial to preserve a value perceived as more important than the use of a trial to discovery truth.).

[45]    *Coffin v. United States*, 156 U.S. 432 (1895) (citing Blackstone's famous maxim that "it is better that ten guilty persons escape than that one innocent suffer."). Blackstone's maxim has been called Blackstone's Ratio—1:10—and has been discussed by many European thinkers in the context of human suffering by an unchecked criminal justice system. *E.g.*, Voltaire, "Collected Works of Voltaire," *Zadig, or Fate,* Ch. 6, p. 12 (Walter J. Black, Publisher, The Giant International Series) (1927) ("It is to him that the nations are indebted for this grand principle, to wit, that it is better to run the risk of sparing the guilty than to condemn the innocent. He imagined that laws were made as well to secure the people from the suffering of injuries as to restrain them from the commission of crimes."); Leo Tolstoy, *Resurrection*, Ch. 28, p. 327 (The

adopt laws which interfere with the truth seeking function of the criminal trial" for the greater transcendental good of insuring that innocent persons are not convicted.[46]   In that regard, the fundamental procedural devices in the criminal justice system, *e.g.*, the presumption of evidence, the reasonable-doubt standard, the right to silence, the legal sufficiency of the evidence requirement, are designed to reduce the probability that an innocent person is convicted.[47]  By doing this they increase the likelihood that some guilty persons will go free.   Are the jury argument preservation rules more protective of civil litigants than criminal defendants even in the history and policies above states?  Surely not.

An additional observation is the fact that if this appellant were a juvenile this case would be appealed, not to the Court of Criminal Appeals, but to the Texas Supreme Court, and therefore the Texas Supreme Court rule would apply, in which case the State's argument would be preserved.   Is this good public policy?  Of course not.

---

World Classics, Oxford University Press) (1994) ("So not only was the rule disregarded, that ten guilty should escape rather than one innocent be condemned, but, on the contrary, for the sake of getting rid of one really dangerous person, ten who were not dangerous were punished, just as, when cutting a rotten piece out of anything, one cuts away also some that is good.").

[46]  *Herrera v. Collins*, 506 U.S. 390, 398-399 (1993) (Listing those mechanisms as the presumption of innocence, right to confront witnesses, right to compulsory process, right to effective assistance of counsel, requirement that the prosecution prove its case beyond a reasonable doubt, right to a jury trial, the requirement that the prosecution disclose exculpatory evidence, and the right to a fair trial).

[47]  *Herrera*, 506 U.S. at 398-399 (Listing those mechanisms as the presumption of innocence, right to confront witnesses, right to compulsory process, right to effective assistance of counsel, requirement that the prosecution prove its case beyond a reasonable doubt, right to a jury trial, the requirement that the prosecution disclose exculpatory evidence, and the right to a fair trial).

Finally, there is the practical problem presented by the facts of this case. Namely, the prosecutor is going along making her improper argument, and even if appellant were to object the bell is rung. It is not like the situation normally contemplated by the trial court objection requirement where the objection is made *before* the jury sees the evidence. Once the jury sees or hears the offending information the case law contemplates and objection, then a request to disregard, and then a motion for mistrial. Here, had an objection been sustained, the motion to disregard, under circumstances, would not have dissipated the taint by the totally improper argument. Therefore, in this case application of the Texas Supreme Court rule is logical and this Court should reach the merits.

The argument in question false outside the four permissible areas of closing argument because it neither sums up the evidence, does not draw a reasonable deductions from the evidence, does not answer to argument of opposing counsel, and is not a plea for law enforcement.[48] The argument is impermissible because it refer to information not introduced into evidence,[49] it is designed to arouse passions and prejudices of the jury,[50] and it is a complete misstatement of the law.[51] The jury did not have to believe the police were liars to acquit appellant,

---

[48] *Bibgy*, 892 S.W.2d at 889; *Coleman*, 881 S.W.2d at 358; *Coble*, 871 S.W.2d at 204.

[49] *Threadgill*, 146 S.W.3d at 666; *Borjan*, 787 S.W.2d at 57; *Daniel*, 550 S.W.2d at 73; *Whaley*, 367 S.W.2d 704; *Denton*, 896 S.W.2d at 584; *Dewit*, 763 S.W.2d at 526; *Morris*, 755 S.W.2d at 509.

[50] *Garza*, 622 S.W.2d at 93; *Thomas*, 527 S.W.2d at 567; *Zakkizadeh*, 920 S.W.2d at 341; *Staten*, 919 S.W.2d at 495; *Mohnkhouse*, 861 S.W.2d at 477-78.

[51] *Rankin v. State*, 881 S.W.2d 14, 16 (Tex. App.—Houston [1st Dist.] 1994, no pet.).

30

rather they only had to believe beyond a reasonable doubt that the state had not established that appellant knowingly possessed the narcotics in question. The jury could easily have believed the officers' testimony and still acquitted appellant.

### ii. The pit-bull-owners-are-drug-dealers argument.

The argument that appellant was a drug dealer because he owned to pit bull dogs and therefore he is guilty of possession the drugs in this case is patently improper. First of all, there was no testimony that appellant owned the pit bull dogs in question. Second, there was no testimony that drug dealers that own pit bull dogs use such dogs in the conduct of the illegal business. Third, it is a logically fallacious syllogism—drug dealers own pit bulls therefore appellant possessed these drugs—that is improperly designed to arouse passions and prejudices of the jury[52] and that has legitimate place in a court of law.

The trial court granted appellant's objection to this argument but denied his request that the jury be instructed to disregard the argument. It was clearly error for the trial court not to instruct the jury to disregard the patently improper argument.

### iii. Harm.

Here there is harm because the magnitude of the prejudicial effect of the prosecutor's remarks was great, the measures adopted to cure the misconduct were minimal as to the one argument because the trial court denied appellant's request

---

[52] *Garza*, 622 S.W.2d at 93; *Thomas*, 527 S.W.2d at 567; *Zakkizadeh*, 920 S.W.2d at 341; *Staten*, 919 S.W.2d at 495; *Mohnkhouse*, 861 S.W.2d at 477-78.

for an instruction to disregard, and the certainty of conviction absent the misconduct was not sure because of the weakness of the case as pointed out in the legal sufficiency portion of this case.[53]   The questions sent out by the jury also show that the jury was specifically interested in the closing arguments and that they were likely close to an acquittal (CR from No. 1238767, pp 127, 128, 129; CR from No. 1238768, pp 106, 107, 108).

## PRAYER

Accordingly, appellant, MARCUS DESHUNN FREEMAN, prays that the court reverse and render the trial court's judgment and acquit appellant, or alternatively, that the trial court's judgment be reversed and remanded for a new trial.

Respectfully submitted,

_____
TIMOTHY A. HOOTMAN
SBN 09965450
2402 Pease St
Houston, TX 77003
713.247.9548
713.583.9523 (fax)
E-mail: thootman2000@yahoo.com

ATTORNEY FOR APPELLANT

---

[53]   *Threadgill v. State*, 146 S.W.3d 654, 666-67 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

# CERTIFICATE OF SERVICE

On this day, I sent a copy of this brief by certified mail, return receipt requested, to the following:

Harris County District Attorney's Office
1201 Franklin
Houston, TX 77002

Dated: 7 – 19 – 11

TIMOTHY A. HOOTMAN